May it please the court. My name is Richard Weiss. I'm here representing the appellants. I would like to reserve five minutes of my time for rebuttal. I'm trying to help you. Go ahead. Thank you. The district court erred here in determining the plaintiff had failed to adequately allege either Sienter or loss causation. First, with respect to Sienter, the district court erred by not stepping back and evaluating all the facts alleged in their totality and cumulatively as Tell Labs, Matrix, and various decisions of this court require. Instead, the district court dismissed each fact alleged one by one. The opinion dismissing the amended consolidated complaint simply doesn't make the required holistic review. Yet, even if each fact alone is not enough, properly evaluated in their totality, as is required, the facts alleged here support an inference of Sienter that is at least as strong as any inference of non-culpability, which is what Tell Labs requires. Moreover, this is a pleading motion. The alleged facts should all be presumed as true. Counsel, you indicated that the district court didn't look at the entire case. But the district court said it did. What more is required? It cited Tell Labs and said even with the holistic review, there's not enough. In its opinion dismissing the first complaint, the court just made a passing statement that whether the statements, the facts reviewed individually or holistically, they didn't measure up. But in the opinion dismissing the amended complaint, the court didn't even make that statement. It only referred to the standard in Tell Labs, but then never purported to undertake any such review that evaluated the facts cumulatively. Well, you complain that the court didn't do it, but the district court cited to Tell Labs. How can we interpret that anything other than the district court making the required analysis if it cites to the exact Supreme Court case that requires that analysis? Even if the court paid lip service to the proper standard, we submit that it didn't reach a proper result here, that the facts judged in their totality as they are supposed to be strongly support an inference of Cyan or that. Okay. So you concede that the court, the district court did so, but you argue that it looked at it erroneously. Well, I believe that the district court took note of what the standard was, but then didn't undertake any analysis that would indicate that it actually looked at the various facts other than individually one by one, which is not ultimately the way to do it. Here in short, the defendants were the top executives at a small company that had few employees and only two business segments. During the relevant time, the company had fewer than 200 employees. The medical unit, which was the focus of our claim, had far fewer. The defendants had accounting expertise. The accounting violations which had been admitted to here were simple and straightforward. They were not highly technical or arcane. Let me ask you a question about that. You're alleging a violation of GAAP with regard to revenue recognition? Yes. And your argument essentially is that it was so obvious that the plaintiff officers should have seen it, correct? That's one of the factors here. There are other facts that ---- Why didn't the certified public accountants who prepare the company's yearly financial statements catch it? Well, we also ---- we allege misrepresentations with respect to the quarterly statements, not just the yearly statements. That's not my question. I assume because it was a publicly held corporation that this company engaged public accountants who actually, if they do their jobs, they're supposed to look at things like how the company is recognizing revenue. Was there a claim brought against the accounting firm? There is no claim against the accounting firm as yet brought here, but ---- So how did they miss it? Well, we haven't had discovery, so we don't know what the defendants told the accounting firm, what information was shown to them. Maybe they misrepresented things to the accounting firm. We just don't know that, and the complaint doesn't or the public disclosures don't reveal any of those facts. Quite simply here, the company recognized revenue on product that did not work, that was not available, and that weren't shipped. They also booked revenue where there was a right of return or other nonstandard terms to the deal that precluded the recognition of revenue on shipment. The violations were widespread over a prolonged time and involved substantial amounts. About $3.7 million of revenue was overstated in 2008, and there was an overstatement of more than 30% in the revenues of the medical division, which is the focus of the case. The violations involved the company's most significant business segment, which was only one of two business segments it had. And that accounted for 40% of total revenue in 2008 and similar or greater percentages in the other years. The medical segments had only a few sales. There was 25 sales each quarter. This was not a company that had thousands of products sold. There were only a handful each quarter. And one of our confidential sources has testified that a packet for each sale and receivable was provided to the chief financial officer, defendant Ambler, and that he personally reviewed each of those and made the final determination about recognizing revenue. So with regard to these sales, are you alleging that the sales were fictitious and never actually occurred, or that they simply recognized the revenues too soon because the salespeople got ahead of their headlights? The company's admissions after the class period and the restatements that they issued revealed that both there was revenue recognized that should not have been recognized, and revenue that was recognized prematurely that should have been recognized more properly in later periods. So either way, there's a fraud. So you're not alleging fraudulent sales, fictitious sales that never occurred? Well, the company has admitted there were sales that should not have been properly booked as revenues, so those may be fictitious. But what dollar value is that? Those were minuscule, isn't that correct, on this record? Well, I believe, for example, with respect to the side agreements that was entered into in 2008, there were three aspects to that. I think about $500,000 was ultimately determined not to be bookable as income. But whether or not the company was simply prematurely recording income or recording fictitious income, it was committing a fraud and misrepresenting its financial statements to the public and conveying a false sense of the company's financial health. There's detailed information in the complaint from a number of confidential sources who are at Immersion Medical and who are intimately involved with the matters here at issue. And they confirm defendants' awareness of and indeed the involvement of certain defendants in the violations alleged. I had a question with regard to the dismissal of defendant Vogel. You don't address the propriety of that dismissal at all in the briefs, so should we deem your objection waived as to him as an individual? We're not contesting the dismissal of Vogel on the basis that he was a nonspeaker, but we are continuing pressing our claim against Vogel based on his insider trading in 2007. But you didn't address that in the briefs. Well, I believe the brief, that claim was only dismissed by the court because there was a finding of no scienter, and we do in the brief address the facts which support scienter as to Mr. Vogel. Well, other than the fact of the trade, which we have case law that says there's not enough standing alone, what else do you have as to Vogel? I didn't see it in your brief. I saw the allegation with regard to trading. The claim as to Mr. Vogel is based simply on his trade. Yes. And even around our case law that says that's not enough to establish scienter. We're not basing the claim of scienter against Mr. Vogel simply on the trade. The trade is what gives rise to the claim against him. But the allegations of scienter. We're talking at cross purposes, I guess. We have case law that says that a trade alone is not enough. So what more? And I didn't see anything else in your brief with regard to Vogel. Well, there's much more alleged to Mr. Vogel. One of the sources confirmed that Vogel was directly involved in improperly directing the shipments and recording of revenue at the medical division, that he shipped revenue. You're talking about the complaint now or the brief. My question specifically was with regard to your brief. I believe the brief made these points, but certainly the complaint does, and the complaint is the confidential sources, which are set out in the complaint and which are referred to in our papers, attest that they regularly provided detailed information regarding every sale and receivable to defendants. The defendant ambly the CFO was provided such information and personally made the final decision to recognize revenue on each transaction. And that they raised concerns about revenue recognition issues. Stepping back and considering all these facts and others alleged in their totality, the inference that defendants were well aware of the widespread accounting improprieties or were at least deliberately reckless we believe is inescapable. Could you briefly discuss your loss causation argument? Yes. At least with respect to the statement at the end of the class period on July 1, 2009, plaintiff has properly alleged loss causation. At that time, the company issued an announcement that the audit committee of the board of directors was conducting an internal investigation into certain previous revenue transactions at the medical business, that outside counsel was involved, and that there could be a material adverse impact on previously reported financial information. But don't you have to connect that to the change in stock price or something in order to meet your loss causation pleading requirement? Yes, we do. And we allege and set out in the brief that immediately upon that announcement that very day, the stock fell over 23 percent on heavy volume. So there was an immediate stock reaction to that. And defendants have offered no all. So is that all you have to show, that there was a notice from the company of restatement and that there was a change in the stock price? You don't have to connect it, connect the two any more directly than that? Is that your position? Well, the stock drop followed immediately upon the announcement on July 1, and we submit on the pleading, that's all that's required. What if there was a general stock drop caused by something other than restatement? What if all stock in America dropped that day? How could you show loss causation? The complaint includes a stock chart which compares the stock immersion with respect to the various certain indexes, and you can see from that that that day it was a very different drop movement than the entire market. Counsel, does that chart cover the period February 10, 2010, when the revised financials were issued? Excuse me, Your Honor? Your chart on the stock price, does it cover February 10, 2010, when the financial statements were reissued? No, I do not believe it does not go up that far. Well, but we're basing the drop here on the drop that occurred after the company announced that it was investigating revenue recognition practices at the medical unit, which constituted over 40% of the company's revenues. All it's saying is we're conducting an investigation. It didn't say whether it was a good or bad investigation. There was no result. Well, but it certainly signaled to the market, first of all, it wasn't just general investigation. It was an investigation into the revenue recognition practices at the medical business, which then ultimately was where we stayed at. I mean, that was the very fraud that we complain of here has to do with the revenue recognition practices. So there was a clear signal to the market about the very practices that we're complaining about, and that resulted in an immediate stock drop of 23%. But the case law says a mere possibility isn't enough. You need more than a mere possibility that an investigation is underway. Well, for example, I think this is very different from the Metzler case, where there was a news article reporting an investigation relating to one college out of 88 colleges that Corinthian operated. That did not reveal a widespread fraud that affected the whole company. Here, the allegations about the announcement that occurred on July 1, 2009, was an announcement about the very division that was the biggest part of the company's business. The company had only two divisions, and it was more than 40% of the revenues. And the announcement also referred to the very matters which the case, which our claims are predicated on, which was revenue recognition practices. It's only a pleading, and at this stage, we don't believe that more detail is required. You're down to a minute. Do you want to save some time for a bottle? Yes, I'll save the remaining time for a bottle. Thank you. Good morning. I'm Nate Pleas of the Court, Jennifer Breton of Fenwick and West, on behalf of the Immersion Corporation Defendants. With me today at the council table is my law partner, Felix Lee. Your Honor, like many unsuccessful securities class actions, this is a restatement case. Public companies from time to time discover mistakes in their financial statements, events come to light that made once good faith accounting determinations incorrect, and invariably when that happens, a lawsuit will follow. And this is one of those lawsuits. But to plead a claim here, plaintiffs needed to plead more than that there was a restatement. They needed to show that there was fraud. And what does that require? That requires particularized facts, not mere conclusion, not speculation, not wishful thinking, particularized facts demonstrating that these defendants acted with scienter. They don't do that. And separately they do allege that, and I think the complaint fairly read, they do allege that the sales department was quite aggressive with regard to the manner in which they were reporting successfully landing sales. Whether that's enough, and ultimately, of course, we know that there had to be a restatement because of the fact that they had been incorrectly recognizing some of these sales. Well, that's correct, Your Honor, but let's look at the nature of the restatement. There are two categories of items that are adjustments, let's say. The first relate largely to non-revenue adjustments, a software glitch regarding stock compensation accounting, which affected many other companies, not just this one. And secondly, the timing of accounting for interest income. Neither of those affected revenue at all, and because of those two non-revenue issues, the company determined to state its 2007 financial statements. I thought the allegations included more, though. I thought they included the fact that, particularly with regard to some of the Chinese companies, that a length of time that the accounts receivable was outstanding was lengthening, that, in essence, goods were being shipped before they were ready to be shipped, but we were booking them as sales anyway, that sales were being booked on a freight-on-board basis without any kind of a purchase order from the customer. I mean, those are all pretty basic accounting violations of revenue recognition, are they not? Understood, Your Honor, but again, there are not any particularized allegations. Particularized facts allege about those issues. As to 2007, as I mentioned, they're non-revenue adjustments that lead to the restatement. All of the trading that happens happens in 2007. The issue that you're talking about, Your Honor, is that in 2008, the company discovered that in 2008 a side agreement with a Chinese distributor affected certain sales in the latter part of 2008. It has nothing to do with the restatement in 2007. To the extent that 2007 was restated, it's largely non-revenue issues. And, in fact, revenue ultimately was understated for 2007, and income was understated for 2007. So how come all these heads got chopped as a result of the internal investigation? Well, it's not unusual, Your Honor, when a company restates its financials, that there are executive departures. But absent from the record here is a single particularized fact showing that the defendants were terminated for fraud. That's what they need to allege. That's what they don't allege. They don't allege any particularized facts, not about Bill & Hold sales. You can search the record in vain for any particularized facts showing that deals were structured as Bill & Hold. You can search the record in vain for a particularized individual who says that any of these defendants, any one of them, knew about the side agreement at the time of the original accounting. In fact, plaintiff omits that the record says the opposite, that it didn't come to light until June 2009, and that no defendants knew about it. Those are the facts. And on one side, you've got a bunch of generalizations, conclusory statements about what plaintiff thinks they should have known or what plaintiff speculates they know, but not a single confidential witness says these defendants were acting with CNTR. Not one of them says they knew they were accounting for revenue incorrectly. And we can look. So that's the nature of their statement. I thought I heard Mr. Weiss say that there was an allegation with regard to Mr. Vogel in the complaint that he improperly directed his staff to prematurely book revenues. There are allegations from one of the witnesses about Mr. Vogel. From a confidential witness. But that confidential witness says nothing that suggests that Mr. Vogel, in fact, there's nothing in the record to suggest Mr. Vogel was responsible for revenue recognition, and there's nothing in the record to suggest that they say the CFO was the ultimate determiner of revenue recognition, but there's nothing in the record to say in light of known facts to that CFO, he determined to recognize revenue on a single transaction improperly. Did not know. So whether or not, irrespective of what Mr. Vogel did or disagreements with Mr. Vogel or the fact that Mr. Vogel may have spoken to people, allegations that he spoke to the CFO about revenue recognition, he wasn't responsible for revenue recognition. Wasn't responsible. And remember, to the extent 2007 is restated, the period at issue here, it's understated. So the restatement increases net income, increases net revenue. And again, all of the alleged trading happens in the 2007 period where the financials were understated. As to... What's your response to opposing counsel's observation that on the day the announcement was made regarding the investigation, the stock took a drop that was not commensurate with the other stock showings? Yes, that's the loss causation argument. Yes. Well, as this court held in Metzler and again in the Oracle decision, it's not enough to disclose the risk or the impact or the possibility. It's just not enough to establish loss causation. You need a corrective disclosure. The announcement of an investigation, it was an announcement of the restatement that they're pointing to. They're pointing to an announcement of an investigation alone. That's it. That announcement revealed nothing of alleged fraudulent acts. It simply announced that an investigation was being undertaken. And under Metzler, that is not enough to plead loss causation. There are numerous things that the market could react to when you announce an investigation, not the least of which is that you're announcing an investigation. But that isn't loss causation. That does not link up the alleged fraud in a corrective way that causes the loss here. And that's the law of this circuit and plaintiff can't get past it. I'd also like to talk about, I'm happy to talk about either loss causation or scienter, but let me just spend a couple minutes on the scienter argument. The district court did conduct a holistic review. Its second order on the motion to dismiss was not in isolation. It may have looked at issues in turn, but that does not mean they looked at the scienter allegations in isolation. The second order referred directly back to the first order on the motion to dismiss, referenced the TELAB standard, and found that plaintiffs had not alleged a single fact that remedied what had doomed the first complaint. As to the stock trading, which I mentioned, all the sales took place back in 2007 during a period when revenue and income was understated. The majority of those sales were pursuant to a 10B51 plan, and given that timing, it certainly does not lend support for plaintiffs' argument that trading in 2007 tells you something about revenue recognition in 2008 and whether defendants who weren't even there at the time had scienter. But for that artificially extended class period, there would be no sales here at all. In fact, the defendants maintained the majority of their stock holdings, the vast majority, and the CEO, during the period in 2008 when plaintiffs alleged the stock was most inflated, Mr. Richardson, the defendant, CEO, purchased stock, began purchasing stock, and the company had authorized in November 2007 repurchase of $50 million of immersion stock. And in 2008, the period where it's alleged to have been most inflated, they purchased 18 million shares of stock, $18 million worth of stock. So TELAB's counsels, you weigh the competing inferences regarding the stock trading on the one side, absence of stock sales in 2008 weighs against scienter, purchases go on the scale, holding on to vested options, 10B51 plans on the scale, the fact that revenue and income is understated in 2007, that goes on the scale, and on the other side, they have nothing. Nothing. That does not raise a strong inference of scienter. As for the confidential witnesses, a plaintiff does try out a series of confidential witnesses, but they don't change the scienter analysis. Not a single witness says the defendants knew that immersion was accounting for revenue incorrectly. The witnesses are not reliable. I want to go to Judge Tallman's point about the extended DSO allegation. That's made by confidential witness number four. Confidential witness number four is claiming to provide support for extended DSOs and discussions with the CFO in 2008. Confidential witness number four left in 2007, well before the company even had a relationship with the Chinese distributor in question, which didn't come into place until May of 2008. And the side agreement doesn't come into place until the fourth quarter of 2008. So confidential witness four is unreliable, has no personal knowledge under ZUCO, cannot be counted in the scienter equation. There are no other facts offered by the confidential witnesses that are consistent with scienter. They, not a single one, attest to the knowledge of any of the defendants of the side agreement. They're most notable for what they don't say. Not a single fact demonstrating impropriety on the part of these defendants. For example, CW1 might have sounded the alarm if she or he was concerned about revenue recognition, but there are no accompanying facts saying that alarm was ignored or that revenue was improperly recognized in the face of sounding an alarm. That the CFO recognized revenue at the end of the day. That's what CFOs do. Nothing says not a particularized fact saying that the CFO did so with knowledge that it was improper or knowledge that it was incorrect. Counsel, what inference are we to draw from the fact that the salesman or the person in charge of the site agreement remained employed? What's the evidence for that? The only thing is plaintiffs saying that he remained employed. That's it. No one says that that person remained employed other than plaintiffs. There's no particularized fact supporting that claim. So I take it we can't draw any inference one way or another. No inference. It's not supported. It would be one thing if they had supported it. They state it, they claim it, they conclude it, but they have no support for that conclusion. Nothing in the record. It's a good point because it's plaintiffs who leaps to a conclusion of fraud from extremely neutral statements of witnesses. And I want to point out one because I think it's emblematic. CW6 purports to have been aware that there were promises made outside of the scope of the company's agreement with the Chinese distributor. That's all CW6 says. What are the promises? We don't know. CW6 doesn't say. Presumably if CW6 knew that there was a site agreement, what the terms of it were, would have said so. And then plaintiff goes in and fills in what CW6 did not say. In other words, and I quote, in other words the site agreement varied the payment terms in violation of the company's policies and gap. CW6 didn't say that. Plaintiff said it. It's the statements of the witnesses that need to be indicative of the scienter, not conclusions. You said that the company restated its earnings after that site agreement became known in 2008. It did. Wasn't it because of whatever the company learned with regard to the site agreement? But the issue, Your Honor, is they attribute what CW6 says in order to conclude that others at the company knew about the site agreement. So your response is it wasn't known until the internal investigation. It wasn't known until June 2009. What the promises were in the site agreement and how they would have an impact. No, all that CW6 says is that he or she knew of promises. That's it. I understand what you're saying about CW6's competency as a witness, but your response to that is the only thing we know is that after the internal investigation, which revealed the existence of the site agreement, then we knew what the terms of the site agreement were at that point and the result was that... But CW6 doesn't say I knew about a site agreement. All CW6 says is I understood there were promises made outside of the agreement with the Chinese distributor. It doesn't say what the promises were or if it was the site agreement. The only thing CW6 can say is there must have been a site agreement because I know there were promises made. Right, but that is leaping to a conclusion from a neutral statement of a witness. And it happens again and again and again in the pleadings and it does not meet the scienter standard, no particularized facts from any confidential witnesses showing knowing fraud on the part of these defendants. It's not enough. They don't meet that hurdle. You are out of time. Thank you very much. All right. Mr. Weiss, I think you have, I'll give you a couple minutes on rebuttal. Thank you, Your Honor. There's no question that accounting violations occurred here. The company has admitted them. The only issue is whether under the facts alleged there's enough to infer a scienter on behalf of the defendants and that includes deliberate recklessness in booking the revenues. Again, this is a very small company. No smoking gun is required. With respect to the site agreement about which the appellees make much, there is evidence from witnesses that CEO Richardson was intimately involved in dealings with the Chinese distributor that was the subject of the site agreement. Moreover, even without that agreement, the restatement for 2008 was almost $3.7 million. That agreement represents only $1.6 million of that. Even if you took that agreement out of it and you submit you shouldn't, that still is a very substantial restatement that would involve a material misrepresentation. We'd also want to point out that Mr. Vogel was fired in July 2008, and that suggests that his, the higher-ups were aware of what he was doing. Regarding the stock sales, while we submit that they do support an inference of fraud, which is the inference of Cyanar here, sales are not required, and even if there were no sales, the rest of the other facts here strongly support the inference of Cyanar. The senior accountant, who is, I believe, CS1, is alleged in the complaint to have identified instances where product was shipped without credit approval to defendant Ambler, who was a CFO. So there's one instance, at least, of direct information being provided to him that should have aroused, which should have aroused his focus on these issues and which he was deliberately reckless if he ignored it. Regarding causation, it's, just want to emphasize that the law in the circuit's clear that a confession of fraud is not required, nor is it required that the market be alerted that the practices at issue constituted a fraud. The district court here recognized that, at least conceptually, the matters alleged on the basis of fraud, that were disclosed on July 1, were related to the fraud involved, and we believe that that's more than enough. Thank you very much. That case just argued is submitted.
judges: Rice, Tallman, Rawlinson